Our second case for argument this morning is Lund v. Rockford. The District Court erred in granting summary judgment to the defendants on plaintiffs' First Amendment retaliation and malicious prosecution claims. Turning first to the First Amendment retaliation claim, one of the core errors the District Court made was how narrowly it viewed the potential bases for retaliation here. The District Court focused solely on whether plaintiffs could sustain a retaliatory arrest claim in light of the fact that there was admitted probable cause based on his driving his bicycle the wrong way on a one-way street. So you are conceding that there was probable cause to arrest him for driving a motorized vehicle the wrong way? No, Your Honor. What probable cause is disputed with regard to everything the police actually charged Mr. Lund with. Where there was probable cause was the fact that bicycles and low-powered vehicles, like what Mr. Lund was driving, are subject to the vehicle code. And so, technically, driving a bicycle the wrong way on a one-way street is a violation of the vehicle code, and Mr. Lund admits that he did that. He wasn't actually given a ticket for that. Under our current law, does it matter that the officers may have had an improper motive if there was probable cause to arrest him for driving this motorized vehicle the wrong way? Well, it really depends on which claim you're talking about. I think that it would defeat a potential false arrest claim. The fact that he wasn't charged with riding the bicycle the wrong way doesn't really matter. It's an objective standard, and if there was probable cause to arrest for riding a bicycle the wrong way, then he can't have a false arrest claim. And that's conceded here, and we haven't appealed the district court's ruling on that. But with regard to the First Amendment retaliation claim, it's different. Here, the defendant officers did something that was designed to punish Mr. Lund's First Amendment-protected activities and to deter future— I understand that argument, but I have the same kind of question as my colleague. Nevis says that even on the assumption that there was retaliation for speech, probable cause defeats the claim. So where are we? Well, I think that— If we look at—there's two ways to look at this First Amendment retaliation claim. First is unrelated to the arrest. The other action that were taken by the defendant officers to punish Mr. Lund for his First Amendment activity, namely deliberately providing his name to the media in association with a list of people who were arrested during a prostitution sting. There is testimony from Defendant Torrance that this is done as a form of public shaming. It was conceded by Defendant Torrance that— You are acquainted with Paul v. Davis, which says there's no constitutional rule against labeling somebody a frequent shoplifter. The Constitution just doesn't cover defamation. So you're alleging defamation, and Paul v. Davis is there. I'm trying to figure out what's in this case that hasn't already been raised and rejected by the Supreme Court. Your Honor, I think that in the context of a First Amendment retaliation claim, I don't think Paul v. Davis would really cover this because what was done here was Mr. Lund's name was put on a list of people who were arrested during a prostitution sting. It makes it look like he solicited a prostitute, which he did not do. And Defendant Torrance has admitted that if you Google Mr. Lund, the first results for his name are prostitution arrests, and most people seeing that would assume that he solicited a prostitute. So that is an independent basis here for a First Amendment retaliation claim because it would deter a reasonable person from engaging in First Amendment-protected activities, such as reporting on what the police were doing in a public place in the future. But turning to the retaliatory arrest aspect of this, I think there's two reasons that the District Court's decision was in error. The District Court relied on Reichel v. Howards and Thayer v. Chizewski in finding that qualified immunity was appropriate. First, those cases had to do with what the established law was in 2005 and 2006, when the arrests at issue happened there. Here we're talking about an arrest that happened much later, in 2012, and things had changed after that. Namely, this Court's decision in Thayer talked about a burden-shifting framework for retaliatory arrest cases where there is potentially probable cause to arrest for something. And the question is whether the First Amendment-protected activity and retaliation for that activity was the but-for cause of the arrest. And here, it seems that there's clearly a jury... They're trying to figure out what you were saying that wasn't rejected by the Supreme Court in Nevis. Are you arguing that it was unconstitutional in 2015 and stopped being unconstitutional in 2019? No, Your Honor. I think that Nevis is consistent with Thayer, which is that probable cause to arrest for any offense is usually and oftentimes a bar to a First Amendment retaliation claim, a First Amendment retaliatory arrest claim. However, here it fits into the narrow subset of cases where there's objective evidence that retaliation was why the arrest happened. It was the but-for cause of the arrest. Yes, that was the assumption of the Supreme Court in Nevis. That doesn't differentiate this case from Nevis. It just tells us what the issue was in Nevis. So I think that this case clearly fits into the category of cases the Supreme Court was talking about there, where the objective evidence in the record is that this arrest never would have happened but for the retaliatory motive. That's the assumption in Nevis. Right? It's what the case was all about. And I guess I'm not sure I'm understanding why this is any different here. That's exactly the problem. If you bring in the Seventh Circuit a case that is indistinguishable from a case in which the Supreme Court said the claim loses, the effect is the claim loses. Well, this case is factually different from Nevis, which is that here... Every case is factually different from another, but the Supreme Court's decision is not limited to Nevis. We can agree on that, I hope. Yes. What the testimony was here, though, is that the defendant officers began chasing after Mr. Lund for the purpose of arresting him when he had only engaged in lawful, First Amendment-protected... No, it's not that he only engaged in lawful activity. You are taking it as given that there was probable cause to arrest him for going the wrong way on a one-way street. If he were engaged only in lawful activity, we would not be within the scope of Nevis. That's right? The point here is that they only witnessed him going the wrong way on a bicycle after they'd chased him for several blocks to make an arrest in retaliation for his engaging in First Amendment-protected activity. So at the time they decided to arrest him, the testimony in the officer's own testimony was that he was a block away from where the sting was happening, and when they told him to leave, he left. But they decided to arrest him anyway. So that sounds like you're relying upon the kind of pretext language in Nevis, in that kind of narrow window that's available there. But even if that's right, if I understand your argument correctly, you still have a timing problem, don't you? That's not clearly established in 2015. I believe that the decision in Nevis is completely consistent with this Court's decision in Thayer. But Thayer, I mean, I don't know. Thayer recognized that the law in this area is unsettled. And so the settling came from the Supreme Court. Well, it's our contention that Thayer set forth the framework that was established at the time this happened. Now, the defendant officer in Thayer was entitled to qualified immunity there because at that time it wasn't clear. Our contention is that Thayer cleared up whatever ambiguity there was. And I see I've gone into my rebuttal time, so I'll reserve the rest. Thanks. Certainly, counsel. Good morning. Mr. Vinson. May it please the Court, Judge Vinson, on behalf of the defendants Campbell-Welch and Torrance, I do think that the Nevis case is dispositive. The Court made it very clear in Nevis that there is no First Amendment right to be free from a retaliatory arrest when probable cause exists. The Court didn't quite say that. It reserves the question what happens if someone is arrested for an offense that almost never gives rise to an arrest. True. And what's interesting in this case is that the record contains evidence that the other man, whose name appears in the article that counsel put into evidence below, was also arrested for obstruction. Because when you look at the publication of the ten people who were arrested that night, you have eight for soliciting a prostitute and two for kidnapping. I don't understand what that has to do with anything. Just that there's an objective. To deal with that part of Nevis, one would have to figure out how often police arrest bicyclists for going the wrong way on one-way streets.  No, there's not. My only point, Judge, is that the only objective evidence in the case about arresting people for obstruction that night is that he wasn't the only one. There was another man. Forgive me. Was Lund breaking any laws by photographing the officers in the sting operation? I would say no. I don't think he was breaking the law by photographing the officers during the police sting. No. Would he have broken any laws if he posted the photos on the Internet? I think that depends on the timing of when he posted the photos on the Internet because that's how we sort of get into the Nevis issue of when the speech is commingled with the crime. What the officers were talking about when they were deposed was the fact that here you have this history with this gentleman of prior instances of obstruction, this very vitriolic rant that he posted on Facebook a few years earlier that was extremely profane and vulgar, showed a great deal of animus towards the Rockford police, so the officers know that. The officers know he's been riding around taking photographs. When they ask him to leave, he rides away in their description in a very angry manner and clearly frustrated. And then, of course, just like Nevis where there was a dispute about everybody's perception about how this went down, the officers' perception was, and Mr. Lund conceded, that he spoke in a very raised voice, loud enough to be heard over a lawnmower engine, which if any of us have ever talked to a neighbor when they're mowing their lawn, you know they've got to raise their voice pretty loudly to be heard. Goodbye, officers, in the direction of the two women who were posing as the prostitutes. And when you take, as the officers testified, the totality of those circumstances, they felt that at that moment now we've crossed the line into the point of obstruction of justice. And they're concerned that he may be riding off because of his demeanor and his animus to go immediately post those photos on Facebook and expose the officers who were conducting the sting, the two women who were unarmed, have no body armor, to a risk of injury in a very dangerous neighborhood in Rockford. And so I think when you calculate all of those circumstances together in the split second that the officers have to do that, which again is exactly what Nevis was talking about when they make these decisions about whether to arrest or not, whether they have probable cause to arrest, that's precisely what happened here. So in many respects, this case fits Nevis like a T. There is no evidence of what they tried, you know, that there were arrests, that they don't normally arrest for the type of crimes that Mr. Lund was arrested for. There's absolutely no evidence of that whatsoever in the record. As I pointed out before, the only object of evidence in the record is that they did arrest somebody else for a traffic violation and obstructing that night. So there appears to be some consistency in their approach here. And even if you go, you know, that's the other question. Do you just straight apply Nevis in this case, or do you apply Reichel and Thayer and just conclude on the qualified immunity position that it was unsettled at the time? So, you know, in my mind, Nevis applies. I think, you know, the law is retroactive. I think all Nevis does is demonstrate what the law has always been. But if you look at this. I thought your argument was at a minimum Nevis so clarifies things so as to make clear that the law was not. I think it does. I mean, to me, that was the issue in preparing for the argument that I sort of struggled with. Do you apply the law now, which is Nevis, or do you apply the law as it was in 2015 at the time of the arrest? At the time of the arrest, there's no question that the law was unsettled. And you have Thayer recognizing that. And I think the plaintiff's interpretation of Thayer is mistaken. I mean, what Thayer talked about, you know, it discusses the burden-shifting approach. But if you look at the cases that Thayer cites in that part of the decision, those are the cases involving teachers who were fired. They're not arrest cases. They're not retaliatory arrest cases. They're talking about the traditional burden-shifting approach that might occur in a typical retaliatory First Amendment case involving an employer and an employee. And that has nothing to do with this case. And when you move through Thayer, in the next portion of the decision, they start talking about Reichel and they start talking about Hartman and the complications of how causation in retaliatory arrest cases is more complicated. It's not as straightforward as it is in the cases involving teachers. And so when they move through that discussion, that's where they conclude this is unsettled. We've never decided this question before. Neither has the Supreme Court. So on that basis, clearly the officers would have qualified immunity because the law was unsettled. So I don't think you can fairly construe Thayer as saying that there is a but-for test in retaliatory arrest cases along the lines of what plaintiff is arguing here. That's just a misreading of Thayer. Thayer is really no different than Reichel. They came down in the same year. Thayer only a few months after Reichel, so this court was fully aware of what Reichel had said, followed the exact same path. This case is no different. This case would be the same circumstances in 2015 at the time of the arrest. Nothing had happened since 2012 when Thayer and Reichel were decided to change that. Clearly there was no clearly stated First Amendment right to be free from a retaliatory arrest based on probable cause. The officers have qualified immunity, which is the path the district court took in this case. Of course, Neves hadn't quite been decided yet when the district court decided this case. But on the other hand, my feeling has always been, or my understanding of the law, is that we're supposed to apply the, I mean, judicial decisions are retroactive unless expressly made prospective. There's nothing about Neves that says it's prospective only, and so therefore it seems to me that Neves is simply announcing what has always been the law, but just hadn't been decided up until Neves. And so that means that the plaintiff was under the obligation to prove that there were circumstances where police officers would not arrest someone under the same or similar circumstances as they arrested Mr. Lund. And the plaintiff has deduced absolutely no evidence of that. So no matter which way you approach it, the law from the standpoint that the law was in 2015 at the time of the arrest or currently. The plaintiff talked a little bit about this retaliatory publication, and I just want, there's two sides to the Halvey-Davis case. There's a factual problem with that argument. The factual problem is that there's no evidence that the police published this or that they even gave it to the media. There's no evidence as to how the media got this. Sergeant Torrance specifically testified that he always puts together a list of arrests, which he gives to his lieutenant at the end of the day, and that's it. He had no idea how this got to the media. He testified he didn't give it to the media. So there's no evidence of how this made it to the media, and it sort of makes sense that if you're running a prostitution sting, you would give a list of the arrestees to your boss, because you never know if city councilman was one of the arrestees. Who knows who's going to make inquiries about what happened that night, and the lieutenant and the chief should be prepared to respond to it. But there's no evidence of how it got to the media. For all we know, the media just happened to be there, and that's how they got the information. So there's a complete causal disconnect here, so the facts don't support that argument, and there's also a forfeiture problem here, because this argument about a retaliatory publication was never made in response to the summary judgment motion below, and it wasn't made in the plaintiff's opening brief. This is the first time this is coming up in the plaintiff's reply brief. Now, I won't deny that they said that was part of the damage that Mr. Lund suffered was the shaming, and I won't deny that Sergeant Torrence said, yeah, when it gets published, it is a form of public shaming. It's the scarlet letter, but, you know, the fact of the matter is there's no evidence as to how it got there, and this claim was not raised in the opposition to the summary judgment motion, and I didn't see it anywhere in the plaintiff's brief except as a description of one of the items that damaged the plaintiff's suffering. So no one talked about malicious prosecution. You know, I think it's pretty clear that the non-suit by the prosecutor had no explanation as to why the case was non-suited. That's not a favorable termination under Illinois law or this Court's decisions, and there's absolutely no evidence of malice in this case. There's nothing to show that things were falsified, that people went in and tried to persuade the prosecutor to push the case against Mr. Lund. Thank you, counsel. Thank you. Anything further, Ms. Nicholas? Thank you. With regard to the malicious prosecution claim, I think it's important to note that the argument the defendant is making here would completely eviscerate the ability of anyone to bring a malicious prosecution claim so long as the baseless charges are dismissed short of trial. Here, the evidence in the record is that all of the claims against Mr. Lund were dismissed by the prosecution, not as a result of a compromise or a plea agreement, and the jury is entitled to look at all of the surrounding factors that went into why that happened, including what the testimony of the parties was, what the facts of the charges being brought were. So the fact that it's nollied is certainly consistent with Mr. Lund's innocence. Finally, with regard to what counsel said about Consistent with, but it's not necessarily indicative of. I mean, they may have dropped these charges just to think, look, we've got to move on, we're not going to take the time and expense on this, there's a lot going on in Rockford, et cetera. And I think if you read all of the Illinois decisions that are cited in the briefing, indicative of his misleading language. It really is a consistent with innocence standard. Otherwise, no one could ever show that a dismissal of a claim is indicative of innocence. Even judgment in your favor after trial and finding him not guilty isn't indicative of innocence, it's just indicative that the prosecution couldn't meet their burden. So we're asking that this court reverse the decision with regard to both the First Amendment retaliation. Yes, thank you, counsel. Thank you, Your Honor. The case is taken under advisement. We'll hear argument now in the case of CSI worldwide against Trump.